IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE SONS, an individual, ) | CIV F 08 - 0840 AWI TAG |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| ) | AND ORDER GRANTING IN |
| v. ) | PART AND DENYING IN |
| ) | PART DEFENDANT'S |
| JIM MCMANIS, ) | MOTION FOR SUMMARY |
| ) | JUDGMENT |
| Defendant. ) | |
| ) | Doc. # 49 |
| ) | |

This is an action in diversity for fraud and unjust enrichment by plaintiff Bruce Sons ("Plaintiff") against defendant Jim McManus ("Defendant"). The action arises out of an alleged agreement between Plaintiff and Defendant to convey property owned by Plaintiff to Defendant to avoid imminent foreclosure. Pursuant to the alleged agreement, Defendant was to receive title to the property by quitclaim deed and was thereafter to use his assets to clear title to the property. Thereafter, Defendant was to reconvey approximately 2.5 acres of the 10-acre property to Plaintiff and to retain the remainder for himself. The property was ultimately sold by Defendant and no reconveyance took place. Plaintiff's First Amended Complaint ("FAC"), filed on January 30, 2009, alleges four claims for relief that are untitled but generally track the elements of claims under California common law for breach of fiduciary duty, breach of contract, unjust enrichment, and fraud. Following the court's decision on Defendant's motion to dismiss, Plaintiff's claims for fraud and unjust enrichment remain.

In the instant motion, Defendants move for summary judgment as to Plaintiff's remaining

claims on the ground that the claims are barred by applicable statutes of limitations. For the reasons that follow, the court will grant in part and deny in part Defendant's motion.

## PROCEDURAL HISTORY

The complaint in this action was originally filed on June 13, 2008. Defendant filed a motion to dismiss or, in the alternative, a motion for a more definite statement on October 15, 2008. On January 5, 2009, the court issued an order granting Defendant's motion to dismiss Plaintiff's claims for fraud and for breach of fiduciary duty; both dismissals were with leave to amend. The court's January 5 order dismissed Plaintiff's claim for fraud on the ground the claim was not set forth with sufficient particularity in violation of Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff filed the now-operative FAC on January 30, 2009. The FAC restated the same four claims that were alleged in the original complaint with minor modifications. Pursuant to an order by the Magistrate Judge for limited discovery and further briefing, the parties submitted briefs and responses on the issues of amount in controversy, statute of limitations, statute of frauds and *res judicata* effects of prior proceedings in small claims court.

On January 8, 2010, the court issued a memorandum opinion and order that construed the parties' briefs as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "January 8 Order"). The court's January 8 Order dismissed Plaintiff's contract claim and claim for breach of fiduciary duty, both with prejudice. Defendant's brief did not specifically address Plaintiff's fraud claim and the court did not find that Plaintiff's fraud claim was subject to dismissal on any of the other grounds argued. The court found that Plaintiffs claims were not barred by the amount in controversy and found that there was not sufficient information that the court could consider to permit a decision on Defendant's contentions with regard to statutes of limitations. After the court's January 8 Order, Plaintiff's claims for fraud and unjust enrichment remain.

The instant motion for summary judgment was filed on June 30, 2010. Plaintiff's opposition was filed on August 9, 2010, following a stipulated modification of the scheduling

2

order.  Defendant's reply was filed on August 16, 2010.

## DEFENDANT'S PROFFERED UNDISPUTED MATERIAL FACTS

The following summarizes in narrative form Defendant's proffered undisputed material facts.  Here, the "Property" refers to an approximately 10-acre parcel of land located in Bakersfield, California.  "Dwight" refers to Plaintiff's brother, Dwight Sons.  "Vincent" refers to Plaintiff's brother, Vincent Sons.

Plaintiff owned the Property which was in foreclosure and scheduled to be sold at a trustee's sale on May 10, 1994.  Plaintiff and his brother, Dwight, decided to seek the assistance of Defendant with regard to the pending foreclosure on the Property before Dwight spoke to Defendant about the Property.  Dwight approached Defendant with a proposal to arrange the transfer of the Property from Plaintiff to Defendant.  The transfer was accomplished by quitclaim deed.  At the time the Parcel was transferred from Plaintiff to Defendant, the two had never met or spoken directly to each other regarding the transfer, nor had they discussed any of the terms of the transfer.  Plaintiff contends [in the complaint] that (1) the Property was to be subdivided by Defendant and (2) that Defendant would reconvey a 2.5-acre portion of the Property back to Plaintiff.  Plaintiff alleges [in the complaint] that Plaintiff agreed to reimburse Defendant for all monies Defendant spent with regard to the property.[1]  Plaintiff also contends that, after the transfer of the Property to Defendant, both parties intended that Plaintiff should continue living at the residence on the Property.[2]

Plaintiff and his former wife, Linda Sons, transferred the Property [by quitclaim deed] to

---

[1] In its January 8 Order, the court noted the ambiguity in Defendant's allegation that Plaintiff had agreed to reimburse Defendant for what has been variously termed "all monies spent" or "out of pocket expenses." It remains ambiguous whether the parties intended that Defendant would be reimbursed for the money Defendant spent on satisfying all claims against the property and/or taxes and monies spent on upkeep, fees and expenses.  As will be discussed below, it also remains ambiguous whether the parties intended the reimbursement of Defendant to be a condition precedent to Defendant's alleged duty to subdivide the property.

[2] The aggregate of the generally undisputed terms of the agreement between the parties, including the transfer of the entire Property to Defendant, the satisfaction of encumbrances on the Property by Defendant, the reconveyance of the 2.5-acre parcel, and the understanding that Plaintiff should continue his residence on the 2.5-acre parcel will be referred to hereinafter as the "Deal."

3

Defendant and his wife on May 10, 1994.  Plaintiff was arrested on July 11, 1994 for fatally shooting a California Highway Patrolman on the same day.  Plaintiff remained incarcerated until he was released in 2006.  Plaintiff never reimbursed Defendant for any monies spent with regard to the Property.

On or about October 18, 1994, Defendant wrote a letter addressed to Dwight stating as follows:

> In response to your request for a proposal for the [Property], the following offering will be in effect until January 18, 1995.
> If a satisfactory response is not made by that date, the property will go on the open market.
> The selling price of the total Property is $331,863.45.  Debt service, taxes, and insurance will be prorated from this date until the date of sale.  Also, any expenses incurred in maintaining the [P]roperty will be added to the selling price.
> If water is not provided to the [P]roperty as previously agreed, the attorney fees, costs of litigation, [illegible] or drilling a well will be added to the selling price.
> If a satisfactory settlement is not made by the January 18, 1995, date, then any implied agreements will be null and void.

Doc. # 52 - 4 (hereinafter, the "Letter").

Defendant alleges the Letter was received by Dwight in 1994 and was received by Vincent in 1994.  Defendant alleges, and Plaintiff denies that Plaintiff believed as of September 13, 1995, that Defendant had not reconveyed any portion of the Property to Plaintiff.  Defendant also alleges that Dwight believed in 1994 that Defendant's Letter indicated that Defendant intended to renege on the alleged Deal.  Defendant stated [in his deposition] that it was evident from Defendant's Letter that Defendant had changed his mind regarding the alleged Deal.

Once incarcerated, Plaintiff did not conduct any investigation regarding the status of the Property or of the alleged Deal with Defendant, or of any potential claims regarding the transfer of the Property to Defendant.  Plaintiff did not attempt to contact Defendant regarding the Property or any potential claims regarding the transfer of the Property to Defendant until after Plaintiff's release from imprisonment in 2006.  Although Plaintiff received many calls and visits from Dwight during his incarceration, Plaintiff never spoke with Dwight regarding the Property or any potential claims regarding the transfer of the Property to Defendant.  Vincent held

4

Plaintiff's power of attorney during his incarceration. Using that power of attorney, Vincent filed the Small Claims Complaint against Defendant and his wife, Barbara McManus, seeking removal of Plaintiff's personal property from the Property. Plaintiff filed the complaint in this case on June 13, 2008.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

6

Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

Defendant's motion for summary judgment is based entirely on Defendant's contention that Plaintiff's remaining claims for relief for unjust enrichment and fraud are barred by the three-year statute of limitations provided by section 338(d) of the California Code of Civil Procedure. Since both parties agree that a three-year statute of limitations applies to Plaintiff's claims, the remaining questions to be resolved are when the three year period began to run on each of the claims, and whether intervening events tolled the running of the statute of limitations.

Under California law, the "discovery rule" controls the commencement of the running of a statute of limitations. Clark v. Baxter Healthcare Corp., 83 Cal.App.4th 1048, 1055 (4th Dist. 2000).

> "Under the discovery rule, *the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.* As we said in Sanchez [v. South hoover hospital, 18 Cal.3d 93 (1976)] and reiterated in Guierrez [v. Mofid, 39 Cal.3d 892 (1985)] the limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person on inquiry . . . .' " ' " [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."

Id. (quoting Jolly v. Eli Lilly & co., 44 Cal.3d 1103, 1110 - 1111(1988) (italics in original)).

> [T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof – when, simply put, he at least "suspects . . . that someone has done something wrong" to him [citation], "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding." [Citation.] He has

> reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. [Citation.]

Norgart v. Upjohn Co., 21 Cal 4th 383, 397-398 (1999).

From the foregoing it is apparent that the determination of events triggering the running of a statute of limitations is intensely factual. "While resolution of the statute if limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper. [Citation.]" Jolly, 44 Cal.3d at 1112. Pursuant to subsection 338(d) of the California Code of Civil Procedure, the discovery rule applies to claims for fraud as well as to claims for unjust enrichment arising from mistake. Id.; Fed. Deposit Ins. Corp. v. Dintino, 167 Cal.App.4th 333, 350 (4th Dist. 2008) ("Dintino"). The court will separately consider whether each of Plaintiff's remaining claims are barred by the three-year statute of limitations.

**I. Unjust Enrichment**

The elements of a claim for unjust enrichment are (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another. Lectrodryer v. Seoul Bank, 77 Cal.App.4th 723, 726 (2nd Dist. 2000). "A person is enriched if he receives a benefit at another's expense. [Citation.] The term 'benefit' 'denotes any form of advantage.' [Citation.] Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.' [Citation.]" Girrardo v. Antonioli, 14 Cal.4th 39, 51 (1996). Unjust enrichment occurs when a party retains for itself the funds that should have been made available to another. Lectrolryer, 77 Cal.App.4th at 726. Determining whether it is unjust for a person to retain a benefit may involve policy considerations. First Nationwide Savings v. Perry, 11 Cal.App.4th 1657, 1663 (6th Dist. 1992). Where policy considerations do not apply, the "customary way of regarding a particular type of transaction'" may provide insight into whether a person has retained a benefit unjustly. Id.; Dromy Intern. Inv. Corp. v. Channel

8

Gateway L.P., 2003 WL 550131 (2nd Dist 2003) at *15.

The first step in determining when Plaintiff's claims accrued is to determine when Defendant "received the benefit" of the 2.5 acre parcel. With regard to a transfer of property, California law regards the conferring of benefit from the transfer to arise at different times as between the grantee of a deed and the trustee of a deed of trust. In First Nationwide Savings v. Perry, 11 Cal.App.4th 1657 (6th Dist. 1972), the purchaser of a trust deed in a foreclosure sale was itself a real estate trust company. Id. at 1661. In an action to recover on a first deed of trust that had been mistakenly reconveyed, the purchasing trust company was held to have "received a windfall" when it sold the trust deed to the property to a bona fide purchaser. Id. at 1670. In contrast, the Dintino court came to a different conclusion where the enriched party was the grantee of a trust deed where the bank hodling the mortgage on a purchase money loan had mistakenly reconveyed the mortgage. In that situation, where the bank had mistakenly extinguished its trust deed lien on the property, the court held that the property holder was enriched at the time of the reconveyance. 167 Cal.app.4th at 351. The court Dintino court held that enrichment occurred when the when the grantee of the trust deed "was free to either encumber or sell the [p]roperty without regard to the Bank's trust deed interest." Id.

Plaintiff has, in prior pleadings, tried to characterize Defendant's relationship to Plaintiff as that of trustee to beneficiary. The court previously has rejected that characterization, finding that the "agreement" between the parties was nothing more than an oral agreement wherein Defendant agreed to assume the liabilities encumbering title to the Property in exchange for title to 7.5 acres of the Property. Such a relationship, this court ruled, did not give rise to a trustee - beneficiary relationship between the parties. See Doc. # 48 at 8-9. The implication of the court's prior ruling, and the conclusion the court reaches now, is that Defendant was merely a grantee of Plaintiff's quitclaim deed. The fact that the grant of the quitclaim deed may have been subject to an ambiguous oral arrangement that obliged both parties to take further actions and which neither party performed does not change the nature of Defendant's possession of the property as grantee.

9

Because Defendant was a grantee and not a trustee of Plaintiff's quitclaim deed, he became enriched as to the 2.5-acre parcel as of the date of the grant; that is, on May 10, 1994. As of that date, Defendant had the legal authority to use, encumber, or sell any or all of the Property, including the 2.5-acre parcel, and pursuant to Dintino, Defendant was enriched as of that date.

As noted above, the essence of unjust enrichment is the unjust *retention* of a benefit at the expense of another. Lectrodryer, 77 Cal.App.4th at 726. The question, then, is when did Defendant's retention of the benefit of the 2.5-acre parcel become unjust? Unlike Plaintiff's claim for promissory fraud, which alleges that Defendant lacked a *present* intent to reconvey the 2.5-acre parcel at the time the Deal was made, the claim for unjust enrichment alleges Defendant unjustly retained the 2.5-acre parcel *or its value*. See FAC, Doc. # 24 at ¶ 20. Thus, the FAC does not necessarily peg Defendant's unjust enrichment to the retention of the 2.5-acre parcel itself. The Fac alleges, at least by implication, that unjust enrichment may be found in the retention of the cash value of the property or in the retention of the 2.5-acre parcel.

As noted previously, the court looks first to policy considerations and then to the "customary way of regarding a particular type of transaction" for guidance in the determination of when the retention of a benefit becomes unjust. First Nationwide Savings, 11 Cal.App.4th at 1663; Dromy Intern. Inv. Corp., 2003 WL 550131 at *15. While there appears to be little in the way of policy considerations to guide the court's decision, there is little doubt that the transaction at issue here has the flavor, although not the legal force, of a contractual arrangement. As the court has previously held, the Deal is unenforceable as a contract because it does not satisfy California's statute of frauds. However, it is not disputed that under agreed terms of the Deal, both Plaintiff and Defendant promised to perform and both received consideration. What remains ambiguous, and is in all likelihood unresolvable, is whether performance by either Plaintiff of Defendant of their part of the Deal was intended by the parties to be a condition precedent to the obligation of the other party to perform.

Because each party was bound under the Deal to perform and because Plaintiff admittedly

did not perform his part of the Deal, the court cannot make the determination that Defendant's failure to subdivide the 2.5-acre parcel and reconvey it to Plaintiff was either a "breach" of the Deal or was in some other way unjust. Certainly in the immediate aftermath of Plaintiff's arrest and conviction there is no basis for the court to conclude that Defendant, who had allegedly spent in excess of $300,000.00 to clear encumbrances to title to the Property, was unjust in retaining possession to the entire Property to see whether or how Plaintiff intended to deal with his part of the bargain.

Defendant contends that the October 18 Letter from Defendant to Dwight placed Plaintiff at least on inquiry notice that Defendant had no intent to reconvey based on his communications with Dwight and Vincent, both of whom knew of the contents of the Letter. The court rejects Defendant's contention for two reasons. First, assuming Plaintiff was in receipt of the letter, the letter itself does not set out a cause of action for unjust enrichment because it does not state an intent to sell the property without any compensation to Plaintiff; it merely states that the Deal (including Plaintiff's payment to Defendant and Defendant's reconveyance of the 2.5 acres) would be considered null and void and that the property would be sold. Second, even if the October 18 Letter could be construed as notice of an intent on the part of Defendant to sell the whole of the Property and retain all the benefits of the sale for himself, the letter would not be sufficient to serve as notice of present unjust enrichment. Defendant does not cite, and the court cannot find any authority for the proposition that a claim for unjust enrichment may be said to accrue upon evidence of the intent to unjustly retain a benefit in the future.

Although the October 18 Letter sets forth Defendant's offer to convey the Property back to Plaintiff upon compensation for the money Defendant spent to clear title to the Property, there is nothing in the facts of this case that suggest that the actual positions of the two parties changed with respect to each other during the time that Property was retained by Defendant. It remained the case during that time that Plaintiff owed Defendant for Defendant's expenses and Defendant owed Plaintiff the reconveyance of the 2.5-acre parcel and neither party performed. If it cannot

be said that Defendant's possession (or retention) of the Property was unjust immediately following Plaintiff's arrest and imprisonment, then there is nothing that can be said to mark the moment in time where Defendant's continuing possession of the Property became unjust.

Nothing in the record before the court indicates any real change with respect to the parties' relationship to each other until Defendant sold the Property to a third party.  As of the time of the sale of the Property by Defendant to a third party, the parties positions changed in that there was no possibility that the 2.5-acre parcel was going to be reconveyed by Defendant to Plaintiff and, to the extent that Defendant was unjustly enriched as a result of the sale price of the Property, the portion of the proceeds that would have been unjust for Defendant to retain were due to Plaintiff.  The court therefore finds that the earliest possible date for the accrual of Plaintiff's claim for unjust enrichment claim is the date of sale of the Property to a third party coupled with the intent of Defendant to retain all proceeds from the sale of the Property. Therefore, under California's notice rule, the statute of limitations began to run on Plaintiff's unjust enrichment claim when Plaintiff had at least inquiry notice of the sale of the Property, not when he had notice of Defendant's intent to not subdivide the Property.

While Defendant's October 18 Letter to Dwight is not sufficient to constitute inquiry notice that Plaintiff had been wronged by Defendant's unjust enrichment, the Letter was sufficient to put Plaintiff on notice that Defendant planned to sell the property if Defendant was not paid for his out-of-pocket expenses.  Because the October 18 letter was sufficient to give notice of Defendant's intent to sell the Property in the immediate future, and because any proceeds from the sale that were due Plaintiff were due immediately upon the sale, the court finds that the statute of limitations began to run as to Plaintiff's claim of unjust enrichment at the time of the sale of the Property to a third party absent any applicable tolling provisions.

As discussed more completely below, Plaintiff alleges that, notwithstanding his frequent contact with Dwight and notwithstanding Dwight's admitted knowledge of the contents of the October 18 Letter, Plaintiff had no actual notice of the contents of the October 18 Letter or of

12

Defendant's intent to sell the Property until Plaintiff's release in 2006. As noted, the standard of the Discovery Rule is an objective, reasonable person standard. Jolly, 44 Cal.3d at 1110 - 1111. As will be discussed more fully below, the court finds that Plaintiff's subjective ignorance is unreasonable in light of Plaintiff's ongoing contact with Dwight during the term of his incarceration and in light of Plaintiff's and Dwight's admitted knowledge of the situation. Aside from the application of statutory tolling, the court finds that the 2-year statute of limitations period began to run when the Property was sold by Defendant to a third-party buyer.

The court has examined the record before it and cannot find any reference to the date the Property was actually sold to a third party, nor are facts presented that would indicate when Plaintiff was on inquiry notice of the sale. Absent facts that clearly establish when the sale of the property occurred and absent facts to determine when Plaintiff was on inquiry notice of the sale, the court lacks information necessary to adequately analyze Defendant's motion for summary judgment on Plaintiff's unjust enrichment claim. The court will stay decision on Defendant's motion for summary judgment as to Plaintiff's claim for unjust enrichment. The parties will be directed to submit information specifying the date of sale of the Property to a third party and to submit any further argument concerning the date of accrual of Plaintiff's unjust enrichment claim.

**II. Plaintiff's Claim for Fraud**

Plaintiff's claim for fraud is based on his allegation that at the time the Deal was struck, Defendant had no *present* intent to subdivide the Property and reconvey 2.5 Acres to Plaintiff. Thus, the gravamen of Plaintiff's claim for fraud is the failure to subdivide the Property and not Defendant's retention of all proceeds from the sale of the Property. Under California's discovery rule, Plaintiff's claim for fraud accrued at the time of the transfer of the Property in reliance on Defendant's knowingly false promise to subdivide and reconvey; that is, in may of 1994. The statute of limitations therefore began to run when Plaintiff had at least inquiry notice as to Defendant's intent. See Security First Nat'l Bank v. Ross, 214 Cal.App.2d 424, 429 (4th Dist.

13

1963) ("Where the gist of an action is fraud, regardless of its form, the three year period provided by § 338(4) of the Code of Civil Procedure applies, but does not commence to run until the aggrieved party knows or should know of that fraud"). California courts "'have repeatedly affirmed that mere ignorance, not induced by fraud, of the existence of the facts constituting a cause of action on the part of a plaintiff does not prevent the running if the statute of limitations [citations]; and that "mere ignorance of the facts, . . . without some valid excuse for the ignorance was of no consequence."' [Citation.]" Hayward Union High School Dist. v. Madrid, 234 Cal.App.2d 100, 126 (1st Dist. 1965). The prevailing rule is that "'a failure to discover a cause of action does not, as in the case of fraudulent concealment, suspend the running if the statute of limitations.' [Citation.]" Id.

The issue here is close. Plaintiff admits Defendant's proffered undisputed material fact #15, which state that Defendant "stated that it was evident from [Defendant's] October 18, 1994, letter that [Defendant] had changed his mind regarding the alleged [D]eal." Doc. # 65-5 at 3. The "change" in Defendant's mind is clearly that he no longer intended to subdivide and reconvey the 2.5-acre parcel back to Plaintiff, if he ever did have such intention. Defendant states in the October 18 Letter that he will sell the Property for the stated price – presumably to Dwight or Plaintiff – by the date set forth or, in the absence of any commitment by Dwight or Plaintiff to purchase the Property, Defendant states he will offer the Property on the open market. Given that Defendant's intent to not reconvey the 2.5 acres back to Plaintiff is the linchpin of Plaintiff's fraud claim, the court finds that the contents of the October 18 Letter are sufficient to give at least inquiry notice of the facts of Plaintiff's claim for relief and therefore to start the running of the limitations period. The question, then is when did Plaintiff know of the contents of the October 18 Letter or when should he have known?

Plaintiff alleges he did not see the see the October 18 Letter or have any indication that the parcel was not reconveyed until his release from prison in 2006. However, two factors militate against the sufficiency of Plaintiff's bare claim of ignorance to justify the conclusion

14

Plaintiff lacked at least inquiry notice. First, Plaintiff was imprisoned for a term of life without the possibility of parole and had left Defendant with the burden of carrying the financial liabilities of the Property, whether subdivided or not, into an indefinite future. It would be quite unreasonable for Plaintiff to expect that such an arrangement would be carried forward indefinitely without some alternative agreement. Second, Defendant took affirmative steps to make his position known by committing his position to writing and delivering it to Dwight. As Defendant points out, Dwight was the only person Defendant had contact with regarding the Deal prior to the conveyance of the Property by quitclaim deed and so was the person Defendant naturally relied upon to address his concerns.

      The parties dispute whether Dwight was Plaintiff's ostensible agent for purposes of negotiating the Deal. The court, however, does not find that the issue turns on the question of agency. Rather, what is important is that it is undisputed that Dwight sought out Defendant to offer him the Deal and acted as go-between in the communications leading up to the conveyance of the Property from Plaintiff to Defendant. It is therefore clear that Defendant's delivery of the October 13 Letter to Dwight should reasonably be expected to put both Dwight and Plaintiff on notice that Defendant was not going to continue to carry the financial burdens of maintaining the Property or any portion of it into an indefinite future and that attention to the Deal was therefore required. It is also undisputed that Dwight was in receipt of the October 13 Letter as of 1994 and that he visited and communicated with Plaintiff frequently and regularly over the term of Plaintiff's incarceration. The question, then, is not whether Dwight's knowledge concerning the contents of the October 13 Letter can be imputed to Plaintiff as a matter of law due to the ostensible agency relationship between Dwight and Plaintiff; it is whether Plaintiff's claim of ignorance regarding matters concerning the Property is reasonable in light of the situation he had placed Defendant in and the information readily available to him were he to inquire.

      The court concludes there was no concealment of the facts as to Plaintiff's fraud claim nor was there any excuse for the ignorance Plaintiff now alleges given the circumstances and the

ready availability of information from Dwight.  The court finds Plaintiff had at least inquiry notice of the facts of his claim for fraud not later than 1995.

Plaintiff claims that he is entitled to both statutory and equitable tolling of the running of the statute of limitations on his claims.  Defendant does not dispute Plaintiff's contention that he was entitled to a two-year tolling period pursuant to California Code of Civil Procedure section 352.1 because he was incarcerated during the period the statute of limitations was running.  However, even with the two-year tolling period, the limitations period ran on Plaintiff's fraud claim not later than the end of 2000, eight years before the commencement of this action.  Plaintiff relies on Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004) for the proposition that, in addition to the term of tolling provided by section 352.1, equitable tolling should apply independently to cover the period from 2000 until the filing of this action.  Plaintiff's reliance on Jones is unavailing.

While equitable tolling is independent of the literal wording of the Code of Civil Procedure id. at 928, the Jones court applied equitable tolling in lieu of, not in addition to, statutory tolling provided by section 352.1.  The Jones court did this in order to avoid the fundamental unfairness that would accrue if a prisoner serving a criminal sentence was to receive the advantage of section 352.1 and a civil detainee housed under the same conditions would not.  Id. at 929.  "California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.' [Citation.] Application of California's equitable tolling doctrine 'requires the balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute.' [Citation.]"

Contrary to Plaintiff's contention that the application of equitable tolling to his fraud claim would result in no prejudice, the court finds that Defendant, having taken reasonable steps to inform Plaintiff of his intentions and having been left to extricate himself from a disadvantageous position because of Plaintiff's inattention, is entitled to repose at least with

16

respect to any claims of fraud that were time barred at the latest eight years before this action commenced. Plaintiff is not barred from his cause of action by a mere technicality or by excusable oversight. The statute of limitations ran on Plaintiff's fraud claim at least eight years before the instant action was filed.  Nor is Plaintiff subject to fundamental injustice by being time-barred as to his fraud claim. As Defendant points out in his reply brief, Plaintiff's contentions with respect to Defendant's intentions during the period of Plaintiff's imprisonment contradict his claim of fraud. Plaintiff alleges in his opposition that "what really occurred here is that once Plaintiff was arrested, [D]efendant sat back, observed, and once a life sentence was imposed, decided he could keep the property in question without abiding by his deal." Doc. # 56 at 2:21-23. Thus, Plaintiff negates his own claim that Defendant had no present intent to reconvey the property at the time the Deal was struck.

The court concludes that Plaintiff's claim for fraud is time-barred. Plaintiff's remedy, if any, lies in his claim for unjust enrichment.

THEREFORE, in accord with the foregoing discussion, Defendant's motion for summary judgment as to Plaintiff's claim for unjust enrichment is STAYED. Defendant shall file and serve a statement setting forth the date of sale of the Property by Defendant to a third-party buyer not less than fifteen (15) days from the date of this order. Either party may submit further argument as to the date of accrual of Plaintiff's claim for unjust enrichment. Such additional argument shall be filed and served not later than fifteen (15) days from the date of service of this order. Defendant's motion for summary judgment as to Plaintiff's claim for fraud is GRANTED.

IT IS SO ORDERED.

Dated:   September 3, 2010

_____
CHIEF UNITED STATES DISTRICT JUDGE

17